UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RAYMONDA C.,

                Plaintiff,

v.                                    3:19-CV-0178
                                    (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON         STEVEN R. DOLSON, ESQ.
  Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

SOCIAL SECURITY ADMINISTRATION          KEVIN MICHAEL PARRINGTON, ESQ.
OFFICE OF GENERAL COUNSEL–REGION I    Special Assistant U.S. Attorney
  Counsel for Defendant
625 JFK Building
15 New Sudbury Street
Boston, MA 02203

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this action filed by Raymonda C. ("Plaintiff") against the Commissioner of Social Security ("Defendant") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are (1) Plaintiff's motion for judgment on the pleadings, and (2) Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9, 12.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1970, making her 45 years old at her application filing date and 47 years old at the date of the ALJ's decision. Plaintiff reported having an 11th grade education. Plaintiff alleges disability due to degenerative disc disease, lumbar spine impairment, rheumatoid arthritis, right-side nerve damage, left knee impairment, bilateral foot impairment, bilateral hand impairment, severe asthma, and severe depression.

### B. Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on October 7, 2015. Plaintiff's application was initially denied on January 21, 2016, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a video hearing before ALJ John P. Ramos on February 6, 2018. On March 19, 2018, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 15-35.)[1] On January 9, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 18-35.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her application filing date. (T. 18.) Second, the ALJ found that Plaintiff's

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

degenerative disc disease of the thoracic and lumbar spine are severe impairments, noting that these two impairments account for all her general musculoskeletal-related complaints including her knee pain; the ALJ also found that her alleged or documented digestive disorders, respiratory disorders, history of ankle surgery, hand, neck and shoulder impairments, urinary incontinence, vision problems, and mental disorders are not severe impairments. (T 18-21.) Third, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 23-24.) The ALJ considered Listings 1.00, 11.00 and 14.00 generally, and 1.02, 1.04 and 14.09 specifically. (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the "full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a)." (T. 24.) Fifth, the ALJ found that Plaintiff is able to perform her past relevant work as a telemarketer as actually and as generally performed. (T. 32-34.) Sixth, the ALJ found that Plaintiff remains able to perform other jobs in the national economy pursuant to the Medical-Vocational Rules for sedentary work. (T. 34-35.) The ALJ therefore concluded that Plaintiff is not disabled.

    **D.**    **The Parties' Briefing on Their Motions**

        **1.**    **Plaintiff's Motion for Judgment on the Pleadings**

Generally, in her memorandum of law, Plaintiff argues that the ALJ erred in formulating the RFC finding without relying on a competent medical source opinion and failed to adequately develop the record related to the lack of a sufficient medical opinion. (Dkt. No. 9, at 5-12 [Pl.'s Mem. of Law].) More specifically, Plaintiff argues that the ALJ relied on his own lay opinion and assessment of the medical evidence by purportedly affording greater weight to the opinion of the consultative examiner but rejecting most of his opinion. (*Id.* at 5-7.) Plaintiff also argues

that the ALJ ignored the absence of an opinion related to Plaintiff's functioning post-surgery and failed to develop the record by failing to obtain an updated consultative examination despite the fact that the record suggests that such an opinion was necessary to accurately and sufficiently assess the RFC. (*Id.* at 9-12.)

### 2. Defendant's Motion for Judgment on the Pleadings

Generally, in his memorandum of law, Defendant argues that the RFC finding is supported by substantial evidence and that the ALJ was not required to obtain additional evidence to render a decision. (Dkt. No. 12, at 8-16 [Def.'s Mem. of Law].) More specifically, Defendant argues that (a) the ALJ appropriately weighed the opinion from the consultative examiner and explained his rationale for rejecting certain limitations included in that opinion, (b) the moderate limitations found by the consultative examiner are consistent with a finding of sedentary work, and (c) the adoption of the additional limitations opined by the consultative examiner would not alter the ALJ's ultimate finding that Plaintiff is not disabled because she would still be able to perform both her past relevant work and other work in the national economy. (*Id.*) Defendant also argues that the ALJ appropriately analyzed the available evidence and that the RFC finding is supported by both the pre- and post-surgery evidence without need for an additional medical opinion related to post-surgery functioning. (*Id.*)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the

correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo*

review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III.     ANALYSIS

### A.     Whether the ALJ's RFC Finding Is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 3-15 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

#### 1.     The ALJ's Weighing of the Consultative Examiner's Opinion is Supported By Substantial Evidence

On January 14, 2016, consultative examiner Gilbert Jenouri, M.D., opined that Plaintiff had moderate restrictions in walking, standing and sitting long periods, bending, stair climbing, lifting and carrying, and that she should avoid smoke, dust and other known respiratory irritants. (T. 361.) The ALJ afforded Dr. Jenouri's opinion significant weight, finding that it was "generally supported by the objective medical evidence that indicates that claimant is precluded from performing very heavy, heavy, medium, and light work" due to her spinal impairments, noting that the moderate limitations for lifting, carrying, standing, and walking are consistent with the regulatory definition of sedentary work and that the moderate limitation for sitting for long periods could be accommodated by regular breaks in a typical workday. (T. 27-28.) The ALJ declined to adopt the opined limitations for use of an assistive device, bending, climbing stairs, and environmental irritants by discussing in detail the evidence that showed those specific limitations were not supported. (T. 28-30.) The ALJ found that, although he did not adopt all of Dr. Jenouri's opined limitations, that opinion was entitled to greater weight than any of the statements from other physicians because it was more consistent with the record as a whole. (T. 32.)

As an initial matter, Plaintiff argues that the RFC contradicts Dr. Jenouri's opinion because "sedentary work requires, inter alia, lifting, carrying, and sitting at length." (Dkt. No. 9, at 7 [Pl.'s Mem. of Law].) As to lifting and carrying, Plaintiff herself notes that the regulations indicate that sedentary work requires the ability to lift no more than 10 pounds at a time and to occasionally lift or carry articles like docket files, ledgers, and small tools. (*Id.*) *See also* SSR 96-9p. Dr. Jenouri's opinion is not in any way inconsistent with this definition, as he opines only a moderate restriction in her ability to lift and carry. As to sitting, the indication that Plaintiff is moderately restricted in her ability to sit for long periods is not inconsistent with the definition of sedentary work. Notably, although sedentary work is defined as generally requiring sitting for a total of six hours in an eight-hour workday, there is no requirement that the claimant must be able to sit for six consecutive hours without an ability to shift positions or take a break. *See Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("The regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight."). The ALJ specifically found that there was nothing in the record that the "long periods" qualification could not be addressed by the regular breaks provided in a typical workplace. Thus, the Court finds that the ALJ's RFC finding is not inconsistent Dr. Jenouri's opined limitations that the ALJ adopted.

Additionally, Dr. Jenouri's indication of "moderate" restrictions in the abilities to stand, walk, sit, lift, and carry are not inconsistent with the capacity to perform sedentary work. As Defendant argues, courts have consistently found that a "moderate" limitation in these types of exertional activities is essentially equivalent to an ability to perform light work (which also

inherently includes the ability to perform sedentary work). *See April B. v. Saul*, 18-CV-0682, 2019 WL 4736243, at *5 (N.D.N.Y. Sept. 27, 2019) (Stewart, M.J.) ("Indeed, moderate limitations in standing and walking [and lifting] are consistent with light work.") (collecting cases); *Randy L.B. v. Comm'r of Soc. Sec.*, 18-CV-0358, 2019 WL 2210596, at *7 (N.D.N.Y. May 22, 2019) (Suddaby, C.J.) (noting that "there is voluminous legal authority . . . that supports the ALJ's finding of light work based in part on the mild to moderate limitations opined by Dr. Jenouri"); *O'Bara v. Colvin*, 14-CV-0775, 2017 WL 2618096, at *3 (W.D.N.Y. June 16, 2017) (noting that moderate limitations are frequently found to be consistent with an RFC for a full range of light work).

As to the limitations in Dr. Jenouri's opinion that the ALJ declined to adopt, the ALJ provided ample good reasons for his actions. (T. 30-31.) *See Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (noting that the ALJ must give good reasons for the weight it affords to an opinion). In general, the ALJ discussed the medical treatment evidence and Plaintiff's reported daily activities that were inconsistent with these opined limitations. (T. 27-32.) As to the limitations for bending and stair climbing, the ALJ noted that (a) few medical sources noted problems with balance or coordination, (b) Plaintiff had been able to change, get on and off the exam table, and rise from a seated position without assistance at the consultative examination, (c) she was able to squat 50% at the consultative examination and was not otherwise observed to be unable to squat on other examinations, and (d) she reported performing activities such as showering and bathing daily, dressing on occasion, going outside daily, and shopping once per week. (T. 30.) As to the limitation for environmental irritants, the ALJ noted that (a) Plaintiff's ongoing smoking was inconsistent with her alleged need for such limitations, (b) she reported

performing activities involving environmental irritants including cooking, cleaning, and doing laundry without significant exacerbation of her symptoms, and (c) no difficulties breathing or communicating were noted at her phone interview with the Social Security Administration in November 2015. (T. 30-31.) As to the limitation for ongoing use of a walker, the ALJ noted that (a) it was not supported by Plaintiff's reported daily activities including work activity after the alleged onset date, (b) although she was noted to have antalgic gait on occasions, such observations were considered in the finding of sedentary work, and (c) she reported to the psychiatric consultative examiner that she walked one-and-a-half miles to that examination less than two months after her surgery. (T. 28.) Notably, the evidence shows that Plaintiff used the walker on a temporary basis following her back surgery in December 2015. On January 8, 2016, Diana Rasmussen, FNP, advised her to begin weaning from walker use, and by March 3, 2016, she was noted to not be using an assistive device; she is not noted to be using a walker or other assistive device after that point. (T. 372, 399-400, 403, 408, 412, 440, 443, 446, 458.)

Plaintiff appears to suggest that the ALJ is not permitted to reject some limitations in a medical source's opinion unless another medical source opines that such limitations are not warranted. (Dkt. No. 9, at 7 [Pl.'s Mem. of Law] ["Although an Administrative Law Judge does not have to strictly adhere to the entirety of one medical source's opinion . . . [he] being a layperson, may not substitute his own opinion over tha[t] of a competent medical opinion."].) However, this argument is directly contrary to the regulations and the very duty with which the ALJ is tasked by the Social Security Administration. Sections 404.1527(c) and 416.927(c) of Title 42 of the Code of Federal Regulations indicates that, when weighing medical opinions, the ALJ must consider multiple factors, including the relationship of the source to the claimant, the

extent to which the source provides support for his or her opinion, the extent to which the record as a whole is consistent with the medical opinion, and the specialization (if any) of the source. 42 U.S.C. §§ 404.1527(c), 416.927(c). The ALJ is therefore both empowered and required to reject limitations opined by a medical source that are not supported by the record as a whole, whether or not another medical source opines that the specific rejected limitation does not exist. As a result, the ALJ was not required to adopt Dr. Jenouri's opined limitations related to postural tasks, environmental irritants, or use of a walker where, as here, he found that the medical and other evidence in the record did not substantiate the need for those limitations.

Lastly, the Court finds that the ALJ provided good reasons for declining to adopt the statements of various treating physicians (to the extent those statements that Plaintiff has disabling pain, must be out of work, or can do activity as tolerated constitute opinion evidence) because the ALJ has provided sufficient good reasons for his findings as to those opinions. (T. 29-32.) *See Estrella*, 925 F.3d at 96.

For all of these reasons, the Court finds that the ALJ's findings when weighing the opinion of Dr. Jenouri are supported by substantial evidence.

### 2. The ALJ Did Not Fail to Develop the Record

The ALJ has an affirmative duty to develop the administrative record, even when the claimant is represented by counsel or another representative. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). However, "an ALJ's duty to develop the record is not infinite. When 'there are no obvious gaps in the administrative record, and . . . the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.'" *Crouch ex rel. K.C. v. Astrue*, 11-CV-0820, 2012 WL 6948676, at *2

(N.D.N.Y. Dec. 31, 2012) (Hines, M.J.) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 [2d Cir. 1999]) report and recommendation adopted by 2013 WL 316547 (N.D.N.Y. Jan. 28, 2013) (Kahn, J.); *see Guillen v. Berryhill*, 697 F. App'x 107, 108 (noting that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim").

In this case, Plaintiff's only argument as to how the record is incomplete is that it does not contain an updated consultative examination from the period after her recovery from her surgery and after the development of her knee impairment. However, the Court finds Plaintiff's argument unpersuasive for the following reasons.

This is not a case in which the ALJ had no opinion evidence to guide his assessment of the medical and other evidence. Plaintiff herself recognizes that there was an opinion from the consultative examiner, and the Court notes that the consultative examiner's examination and opinion were conducted approximately a month after Plaintiff's lumbar spinal surgery. Although the Second Circuit has cautioned that an ALJ should not rely heavily on the findings of consultative physicians after a single examination, it also recognizes that the opinion of a consultative examiner may constitute substantial evidence where it is consistent with the record as a whole. *Byrne v. Berryhill*, 752 F. App'x 96, 98 (2d Cir. 2019); *see Trepanier v. Comm'r of Soc. Sec.*, 752 F. App'x 75, 78-79 (2d Cir. 2018) (finding that the ALJ did not improperly rely on his own lay judgment where he relied on the opinion of the consultative examiner and other substantial evidence in the treatment notes); *Foster v. Saul*, 18-CV-0558, 2019 WL 429132, at *7 (W.D.N.Y. Sept. 11, 2019) (noting that "[t]he ALJ is permitted to rely on a consultative

examiner's opinion that is based on a physical examination and is consistent with other evidence in the record") (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 [2d Cir. 2013]).

Plaintiff's reliance on *House v. Astrue*, 11-CV-0915, 2013 WL 422058 (N.D.N.Y. Feb. 1, 2013) as a guide in this case is misplaced. In that case, the Court found error where the ALJ properly rejected the treating physician's opinion, but there was no other medical source opinion supporting the ALJ's finding that the plaintiff could perform sedentary work. *House*, 2013 WL 422058, at *4; *see also Brado v. Comm'r of Soc. Sec.*, 15-CV-1444, 2017 WL 87042, at *5-6 (N.D.N.Y. Jan. 10, 2017) (Suddaby, C.J.) (finding failure to develop the record where ALJ rejected the only functional opinion in the record); *Provencher v. Comm'r of Soc. Sec.*, 15-CV-1287, 2017 WL 56702, at *5 (N.D.N.Y. Jan. 5, 2017) (Suddaby, C.J.) (finding failure to develop the record where the ALJ rejected the only functional opinion in the record that was found to be not vague). Here, as already discussed, the ALJ relied on a number of the limitations opined by Dr. Jenouri that were the basis of his finding for a capacity to perform sedentary work, and provided explicit reasons supported by the evidence for rejecting other limitations he found to be contrary to the weight of the evidence as a whole. Consequently, because the ALJ *did* rely on Dr. Jenouri's opinion to inform his RFC finding, Plaintiff's argument that the RFC finding was based solely on the ALJ's lay interpretation of the record is rejected.

The Court is similarly not persuaded by Plaintiff's argument that the ALJ was required to develop the record by obtaining an updated consultative examination that would account for her post-surgery functioning. This Court has noted that, "[g]enerally, the ALJ should order a consultative examination when 'a conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved,'" but that "the ALJ 'is not obligated to send a litigant for a

consultative examination if the facts do not warrant or suggest the need for such an examination.'" *Cox v. Astrue*, 993 F. Supp. 2d 169, 177 (N.D.N.Y. 2012) (McAvoy, J, Bianchini, M.J.). The Court sees nothing in the post-surgery treatment notes that suggests that the ALJ was unable to make a reasoned decision without an additional consultative examination and opinion. The ALJ explicitly considered this post-surgery evidence, including Plaintiff's left knee symptoms, when weighing the opinion evidence and determining the RFC. (T. 27-32.) Having reviewed the medical evidence, the Court cannot say that the ALJ's finding that Plaintiff remained capable of performing sedentary work is inconsistent with imaging of Plaintiff's knee that showed only very mild deterioration of the kneecap or with observations of some pain, tenderness, and crepitus in that knee resulting in an antalgic gait without swelling or focal weakness. (T. 402-03, 405, 408, 443, 446.) Nor do the observations related to her lumbar and thoracic spine in later 2016 and 2017 show symptoms of any significantly greater magnitude than those observations made by Dr. Jenouri at the January 2016 consultative examination such that the ALJ would have required a new assessment of Plaintiff's functional limitations to make a reasoned determination. (*Compare* T. 359-61 *with* T. 499-400, 412-13, 436, 440, 443, 446, 458.) The fact that those findings post-date Dr. Jenouri's examination and opinion do not mean that his opinion automatically becomes stale or valueless. Rather, it is the ALJ's duty to weigh all of the evidence in the record when determining whether the limitations opined signify a claimant's overall functional capacity for the entire relevant period; the Court is convinced, based on the ALJ's thorough discussion of the evidence, that the ALJ did just that in this case. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). Plaintiff has failed to point to any evidence that persuasively shows that the ALJ's RFC for sedentary work is not supported by

substantial evidence, or to point to any persuasive way in which the record was so deficient that the ALJ could not have made a decision related to the post-surgery period without a new consultative examination.

For these reasons, the Court finds that the ALJ did not commit any legal error in failing to order an updated consultative examination as Plaintiff argues.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: January 3, 2020
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge